PEOPLE *v*. BLUTE.

(*Supreme Court, General Term, Fifth Department.* October 21, 1892.)

1. ASSAULT WITH INTENT TO RAPE—SUBMITTING EXTRINSIC FACTS TO JURY.
    On a prosecution for an assault with intent to ravish, allowing the jury to pass on the extrinsic fact as to whether lawlessness and crime go unpunished in the town where defendant lives is error.

2. SAME—MOTIVE OF PROSECUTRIX.
    On a prosecution for an assault with intent to ravish, it is error to give a positive instruction that the prosecutrix had no motive in giving her testimony touching the time and place of the assault.

Appeal from court of sessions, Steuben county.

Michael Blute was convicted of assault in the second degree, from which, and an order denying his motion for a new trial, made on a case and exceptions, and also on affidavits of newly-discovered evidence, he appeals. Reversed.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*Frederick Collin,* for appellant. *Frank H. Robinson,* for the People.

MACOMBER, J. The charge made against the defendant and one John Minon, who was jointly indicted with him, was, under subdivision 5 of section 218 of the Penal Code, that at the city of Corning they assaulted one Bessie Thomas, a colored woman, with intent, by force and violence, and without her consent, to ravish her. Minon was acquitted by the jury. The evidence of the people consists mainly of the testimony given by Bessie Thomas herself, which was briefly to the effect that while on her way from the city of Corning to her home in the town of Corning she was caught, at the corner of Bridge and Pultney streets, in that part of the city of Corning known as "Knoxville," by the defendant and another man, and was dragged a distance of one block, shown to be 429 feet, and on another street a distance of about 550 feet, to a schoolhouse, where one of the men threw her down, whereupon she screamed, and in answer to the scream a person with a lantern came to the place, and then the man let her loose and ran away. The complainant was accompanied by a girl by the name of Kittie Thompson, who, upon her direct examination, testified that she met Bessie Thomas on the corner of Bridge and Pultney streets, in Knoxville, and that two men took hold of her, and grabbed her by the arm, whereupon she broke away and ran. Her testimony, as a whole, was designed to leave the impression that Bessie Thomas, the complainant, was at or near the corner of Bridge and Pultney streets when accosted by the men. But the evidence in behalf of the defendant shows with much conclusiveness, as well as much testimony given in behalf of the people, that whatever assault was committed by the defendant upon Bessie Thomas was made upon the steps or near the steps of the schoolhouse. If this be so, there is not any evidence which would justify the jury in the verdict rendered. There is evidence given in behalf of the defendant to the effect that on the evening in question, which was April 12, 1890, these two women had made an appointment with John Cogan and Martin Miles for a meeting on the Knoxville bridge. Soon thereafter it is claimed Cogan told this defendant of such appointment; that Cogan and Miles met the women according to appointment, and passed down Bridge street with them to Jennings street, to the schoolhouse, when Miles and Bessie Thomas turned in, and sat on the step of the schoolhouse, and Cogan and

Kittie Thompson went on towards Flint street; that the defendant, Blute, had followed these people, and then, with two others, John Minon and John Poland, continued to follow them, for the purpose, as was said among themselves, of having a little fun. After Bessie Thomas and Miles had gone to the schoolhouse steps, Blute and Poland went across the road west of the schoolhouse, so as not to be seen, and came from the other side of the schoolhouse, when Blute, impersonating a policeman, said to them: "What are you doing here? I will have to lock you up." Bessie Thomas at that point began to scream, when Cogan and the other men ran away, and when the person with the lantern appeared Blute also went off.

If the relation of facts as given in behalf of the defendant is true, it is quite plain that the defendant did not commit the crime charged against him. And it is somewhat difficult to account for the verdict, except upon the ground that the jury's minds must have been unduly influenced, as is claimed by the learned counsel for the appellant, by the charge of the learned county judge. The judge began his charge by telling the jury that the defendants had been indicted by the "diligent efforts" of the grand jury, but that such indictment was "not conclusive evidence of guilt, but it is a charge by which they say by their indictment should be investigated and tried by a trial jury, as you are." After calling their attention to the rule that before an indicted person can be convicted the jury must be satisfied of his guilt beyond a reasonable doubt, the learned judge instructed the jury that "it is for you to say what shall be a reasonable doubt; whether it exists in this case. A reasonable doubt must rest upon some reason. A juror must not say, 'I have got it,' unless he has got some reason to doubt the evidence, or the whole evidence in the case. * * * So that, gentlemen, you will discover that you are—to use a common expression—you are to a great extent master of the situation. The responsibility of this matter is with you, and, while the defendants have a right to expect fair treatment and fair consideration, the public, society, and the people are looking out to see that the public are protected, and not violated. * * * The prosecution places their evidence upon the evidence of two witnesses. Bessie Thomas, who is the complainant, is a woman, a married lady, pursuing a legitimate and worthy enterprise, her husband being a barber working at Painted Post, her home being up in that direction, and she a hairdresser, and working for such customers as employ her, and the two having the care and bringing up of their little children. She comes upon the stand, and tells you in a plain and earnest manner," etc. He further instructed the jury that there was nothing to contradict the statement of Kittie Thompson that she ran when the men came and grabbed Mrs. Thomas. He further said in respect to these two witnesses: "They told their story, and adhered to it. They answered all the questions; no hesitation; no disposition to excuse or shirk the answers. They told their stories, and then submitted to the cross-examination," etc. In speaking of the defendants and the other men who were with them, the court said: "They range from the age of twenty-one to thirty-four years. It does not appear that any have families, although at the age when you might naturally expect in the natural course of human events that they would be men of families. If they are not, then they were at liberty, as far as the family was concerned,—as far as domestic relations were concerned,—to seek out their own line of conduct. If they are men of families, then it is to their shame that they engaged in any such enterprise as they went over into Knoxville for. They tell a story upon which all concur; and they are all friends, all confidants, or they would not attempt to engage with each other in such an undertaking as they undertook that night. It is not the way good men or good citizens conduct themselves. What business had they over there, any of them? The two claim they made this engagement with these two women. Another one tells Blute of it,—and he felt safe in trusting

Blute,—goes on, according to his story, and says they would have some fun with them. Now, all this may be true; but how does it impress you? You are not to determine this case or any other by the mere testimony, or what is sworn to, or by the number of witnesses on either side, but by what you really and honestly think is the truth. * * * They give such character to themselves as they see fit, and you are to take that as true. How many of them had been arrested, and how many times they had been arrested. What is the character of the offenses that they have been arrested for? And beyond and above all, what was their purpose in going across the river that night, following these two women,—what was their purpose? It is for you to say whether their credibility as witnesses is affected by these considerations. * * * Now, on the other hand, how is it with these two women? Is there anything from the time they were born down to the time of this trial that is shown that should affect their credibility? * * * Has there been any object on the part of these two witnesses—these two women—to tell anything but the truth? If this was an action for damages, where you were sitting in a trial jury in a case of damages, where you might award five hundred or a thousand dollars to Bessie Thomas for this assault, then it might be said she had a purpose in telling her story against Blute, or against any of the persons; but there is not anything of that kind in this case. Is she an interested witness in any way? Not a dollar or a penny can she receive from any results that may come from this trial. * * * Now, you will recollect that the witnesses in this case for the defendant,—and they have been at liberty to call upon everybody on earth that they wanted to, to excuse themselves, and they have been at liberty to produce evidence of their own good character, which they have not done. The people cannot attack their characters until they give evidence of their good character. This they have not done, and the people have to be silent on the subject of character for that reason, and they have called all the witnesses they desired to. Those five men constitute substantially the defense. Their evidence constitutes substantially the evidence, whatever it is."

After the delivery of this charge, the defendant's counsel, among other requests to the court to charge, submitted the following: "That there is no evidence in this case that lawlessness and crime go unpunished in Corning, as stated by the district attorney in his address to the jury. *Court.* I will leave that with the jury to say." Exception was taken by the counsel to certain portions of the charge as delivered. While it is true that the precise remarks made to the jury by the district attorney are not given in the case, yet it was assumed upon the trial that in his address he had used the language attributed to him, because there was no denial thereof. But this extrinsic fact, whether lawlessness and crime went unpunished in Corning, was submitted to the jury. The counsel also asked the court to instruct the jury as follows: " I ask your honor to charge that the fact that the defendants were indicted by the grand jury is no proof, presumptive or otherwise, of their guilt. *Court.* I have so charged." The case, as printed, does not contain such instructions. But assuming that the learned court intended by its remark last given so to charge, we are still of the opinion that the effect of the charge, as a whole, was calculated to, and doubtless did, influence the minds of the jury in a manner prejudicial to the rights of the defendant. Moreover, there was an actual error in the charge respecting the motive of Bessie Thomas, the prosecutor. The jury were positively instructed that she had no motive in giving her testimony touching the time and place of the assault. But it appears to us, however, that there might have existed a bad motive on her part, and that was to shield herself from the effect of the testimony given by the witnesses as to the appointment which she and the young woman had made, and particularly had she the strongest motive to shield herself from the embarrassment of being with a strange man on the steps of a schoolhouse, a

place considerable distant from any point that she would naturally traverse on her way home. On the whole, we think that the motion for a new trial should have been granted by the court of sessions on the defendant's motion, which was made on a case and exceptions.

Judgment and conviction reversed, and new trial granted, and the case remitted to the court of sessions of Steuben county, with instructions to proceed therein. All concur.